## UNITED STATES DISTRICT COURT
## NORTHERN DISTRICT OF ILLINOIS
## EASTERN DIVISION

| | | |
|---|---|---|
| **MARIO G.,**[1] | ) | |
| | ) | **No. 21 CV 472** |
| Plaintiff, | ) | |
| | ) | |
| v. | ) | **Magistrate Judge Young B. Kim** |
| | ) | |
| **MARTIN J. O'MALLEY,** | ) | |
| **Commissioner of Social Security,** | ) | |
| | ) | **March 4, 2024** |
| Defendant. | ) | |

### MEMORANDUM OPINION and ORDER

Mario G. seeks disability insurance and supplemental security income benefits asserting he is disabled by several mental health disorders, addiction to prescription stimulants, and migraines. Before the court are the parties' cross motions for summary judgment. For the following reasons, Mario's motion is denied and the government's is granted:

### Procedural History

Mario filed applications for benefits in March 2018 alleging disability onset on November 3, 2016. (Administrative Record ("A.R.") 100.) His applications were denied initially and upon reconsideration at the administrative level. (Id. at 100-157.) Mario then sought and was granted a hearing before an Administrative Law Judge ("ALJ"). (Id. at 177-78, 195.) Mario appeared with his attorney at the November 2019 hearing, during which Mario and a vocational expert ("VE") testified.

---

[1] Pursuant to Internal Operating Procedure 22, the court uses Plaintiff's first name and last initial in this opinion to protect his privacy to the extent possible.

(Id. at 49-99.)  The ALJ issued a partially favorable decision in March 2020, finding Mario disabled from November 3, 2016, through August 1, 2018, but not thereafter. (Id. at 19-36.)  The Appeals Council denied Mario's request for review, (id. at 1-3), making the ALJ's decision the final decision of the Commissioner.  *See Jozefyk v. Berryhill*, 923 F.3d 492, 496 (7th Cir. 2019).  Mario then sought judicial review, and the parties consented to this court's jurisdiction.  *See* 28 U.S.C. § 636(c); (R. 6).

## Analysis

Mario claims that the final decision should be vacated and the case remanded for further proceedings because: (1) the Commissioner's appointment violates constitutional separation of powers; (2) the ALJ erred at step two in finding his migraines non-severe; (3) substantial evidence does not support medical improvement as of August 2, 2018; and (4) the ALJ's symptom assessment is deficient. (R. 16, Pl.'s Mem.)  Embedded in the claims are additional complaints about the ALJ's treatment of the opinion evidence and third-party function reports, and her residual functional capacity ("RFC") assessment.  (Id.)

When reviewing the ALJ's decision, the court asks only whether the ALJ applied the correct legal standards and her decision has the support of substantial evidence, *Burmester v. Berryhill*, 920 F.3d 507, 510 (7th Cir. 2019), which is "such relevant evidence as a reasonable mind might accept as adequate to support a conclusion," *Biestek v. Berryhill*, 139 S. Ct. 1148, 1154 (2019) (quotation and citations omitted).  This deferential standard precludes the court from reweighing the evidence or substituting its judgment for the ALJ's, allowing reversal "only if the record

2

compels" it. *Deborah M. v. Saul*, 994 F.3d 785, 788 (7th Cir. 2021) (quotation and citation omitted). In this circuit the ALJ must also "provide a 'logical bridge' between the evidence and [her] conclusions." *Butler v. Kijakazi*, 4 F.4th 498, 501 (7th Cir. 2021) (quoting *Varga v. Colvin*, 794 F.3d 809, 813 (7th Cir. 2015)). Put another way, the ALJ's "analysis must say enough to enable a review of whether the ALJ considered the totality of a claimant's limitations." *Lothridge v. Saul*, 984 F.3d 1227, 1233 (7th Cir. 2021). Having considered Mario's arguments and the record under this standard, the court concludes that remand is not warranted.

## A.    Separation of Powers

The court addresses Mario's constitutional argument first. Mario argues that his case should be remanded because the Social Security Administration ("SSA") is unconstitutionally structured. (R. 16, Pl.'s Mem. at 14-15.) Mario relies on *Seila Law LLC v. Consumer Financial Protection Bureau*, 140 S. Ct. 2183, 2197 (2020), in which the Supreme Court held that the Consumer Financial Protection Bureau's ("CFPB")"leadership by a single individual removable only for inefficiency, neglect, or malfeasance violates the separation of powers." Mario contends that the SSA's structure mirrors the CFPB's insofar as the SSA has a single Commissioner who may be removed only for cause and serves a term longer than that of the President of the United States, as set forth in 42 U.S.C. § 902(a)(3). (R. 16, Pl.'s Mem. at 14-15.) As such, Mario asserts that the Commissioner's authority is "constitutionally defective" and that he was deprived of a "valid administrative adjudicatory process." (Id. at 15.)

3

In response, the government concedes that the SSA's structure "violates the separation of powers to the extent it is construed as limiting the President's authority to remove the Commissioner without cause." (R. 22, Govt.'s Resp. at 2.) But it asserts that no separation-of-powers concerns apply here because the ALJ who denied part of Mario's claim had her appointment ratified by an Acting Commissioner who was not appointed pursuant to Section 902(a)(3) and could be removed at will, thus eliminating any possibility of a constitutional violation. (Id. at 3, 5-6.)

Regardless, the year after the Supreme Court decided *Seila*, it held in *Collins v. Yellen*, 141 S. Ct. 1761, 1783 (2021), that an unconstitutional removal restriction does not render invalid the lawful appointment of an agency head. *See Teddy J. v. Kijakazi*, No. 21 CV 1847, 2022 WL 4367577, at *2 (N.D. Ill. Sept. 21, 2022); *Michelle D. v. Kijakazi*, No. 21 CV 1561, 2022 WL 972280, at *6 (N.D. Ill. March 31, 2022). Here, then-Acting Commissioner Nancy Berryhill was lawfully appointed, and there is "no basis for concluding that [she] lacked the authority to carry out the functions of the office." *Collins*, 141 S. Ct. at 1788. Moreover, even if Mario could mount a constitutional challenge based on Section 902(a)(3), the court agrees with the government that he cannot show the requisite nexus between that provision's removal restriction and any harm he suffered. (R. 22, Govt.'s Resp. at 7-10.) In the wake of *Collins*, "numerous courts have ruled that a frustrated Social Security applicant . . . must show that the unconstitutional removal provision actually caused [him] harm in some direct and identifiable way." *Cheryl T. v. Kijakazi*, No. 20 CV 6960, 2022 WL 3716080, at *4 (N.D. Ill. Aug. 29, 2022) (collecting cases). Mario does

not identify any direct harm in his opening brief, (R. 16, Pl.'s Mem. at 14-15), and suggests in his reply that *Collins* is inapplicable and harm may instead be presumed, (R. 23, Pl.'s Reply at 10-12). But Mario's position goes against the tide, and the court declines to infer the requisite harm. *Collins*, 141 S. Ct. at 1789.

## B.    Migraines

Mario claims that the ALJ erred at step two when finding his migraine headaches non-severe, arguing that they were disabling in their own right. (R. 16, Pl.'s Mem. at 12-14.) "The Step 2 determination is 'a *de minimis* screening for groundless claims' intended to exclude slight abnormalities that only minimally impact a claimant's basic activities." *O'Connor-Spinner v. Colvin*, 832 F.3d 690, 697 (7th Cir. 2016) (quoting *Thomas v. Colvin*, 826 F.3d 953, 960 (7th Cir. 2016)); *see also* 20 C.F.R. § 404.1520(c). But any error in characterizing an impairment as "non-severe" is harmless if the ALJ finds at least one severe impairment and considers the aggregate effect of all impairments when formulating the RFC. *Arnett v. Astrue*, 676 F.3d 586, 591 (7th Cir. 2012). Here, the ALJ concluded that Mario's various mental impairments were severe, so finding his migraine headaches non-severe did not constitute error on its own.

However, Mario complains that the ALJ also failed to sufficiently address the aggregate effect of his migraine headaches combined with his other impairments when assessing his RFC. (R. 16, Pl.'s Mem. at 14.) In considering Mario's migraines, the ALJ noted at step two that the record reflected "minimal treatment for migraines/headaches," which were "controlled and/or resolved with medical

injection," and found "no evidence" that Mario's migraines resulted in more than "minimal" limitation to his ability to "perform basic work activities for a period of 12 months or more." (A.R. 24.) When assessing Mario's RFC, the ALJ stated only that Mario's "[p]hysical symptoms relate to headaches treated with nerve blocks, Tylenol and [Aleve] which takes the 'edge off,' and GERD." (Id. at 25.) She did not explain whether or how she factored those headaches into the RFC. But even if the ALJ erred, such error was harmless.

First, while Mario asserts that the ALJ "omitted many pertinent facts in the record"—noting 2019 neurology treatment records in which Mario reported daily headaches for the past year for which he began receiving occipital nerve blocks, (R. 16, Pl.'s Mem. at 13 (citing A.R. 1775); R. 23, Pl.'s Reply at 7 (citing A.R. 1781)), his own hearing testimony that he would be absent and have "difficulty being consistent at work" in part because of his headaches, (R. 16, Pl.'s Mem. at 14 (citing A.R. 79)), and 2016 MRI and CT scans reflecting conditions he says relate to his headaches, (id. (citing A.R. 442, 1189-90))—the ALJ referenced the nerve blocks and related treatment notes and did not doubt that Mario suffered headaches, (A.R. 24, 25). Further, and despite Mario's reports of daily headaches for a year before beginning nerve blocks in 2019 and again in between nerve blocks when their effects had worn off, Mario told his providers that his headaches were not severe. (See id. at 1771-76 (January 2019 neurology treatment notes indicating that because of Tylenol and ibuprofen his daily headaches "do not become severe"); see also id. at 130, 146 (state agency medical consultant's notes that Mario reported his "chronic headaches"

were "fairly well-controlled").)  Finally, Mario's own attorney stated at the hearing that Mario's headaches were "better under control" and expressed doubt about whether they could be considered severe, (id. at 53-54), and there is no medical opinion evidence in the record noting any limitations because of Mario's headaches. And while Mario asserts that the ALJ should have called for an updated opinion concerning his headaches, (R. 23, Pl.'s Reply at 7), the court disagrees because the record evidence contradicts Mario's current assertions about his headaches. Accordingly, even if the ALJ erred in finding Mario's migraine headaches non-severe, or by failing to adequately trace a path between the evidence and her RFC assessment, such error was harmless and remand is not warranted on this basis.

## C.    Medical Improvement

Mario claims that the ALJ erroneously found that he experienced medical improvement as of August 2, 2018.  (R. 16, Pl.'s Mem. at 5-12.)  Medical improvement is "any decrease in the medical severity of [the claimant's] impairment(s) which was presented at the time of the most recent favorable medical decision that [the claimant was] disabled or continued to be disabled."  20 C.F.R. § 404.1594(b)(1).  A finding of decreased medical severity must be based on "changes (improvement) in the symptoms, signs or test results associated with [the claimant's] impairment(s)."  *Id.* In other words, "[w]hen, as here, the ALJ finds the claimant disabled for a closed period in the same decision in which she finds medical improvement, the severity of the claimant's current medical condition is compared to the severity of the condition as of the disability onset date."  *Marvietta H. v. Saul*, No. 19 CV 610, 2020 WL

7

7698369, at *5 (N.D. Ill. Dec. 28, 2020). It is the Commissioner's burden to show medical improvement that "is related to the claimant's ability to work," *Christine N. v. Kijakazi*, No. 19 CV 2171, 2022 WL 474201, at *5 (N.D. Ill. Feb. 16, 2022), which means that the improvement results in an "increase in [the claimant's] functional capacity to do basic work activities," 20 C.F.R. § 416.994(b)(1)(iii). The government has met this burden.

From November 3, 2016, through August 1, 2018, the ALJ concluded that Mario had the RFC to perform a full range of work with the following non-exertional limitations:

> [a]bility to understand, remember, and carry out simple instructions; occasional interaction with supervisors, co-workers, and the public; no high production demands but can meet end of day goals; with simple decision-making, in a routine work environment with little, if any, workplace changes; and off task 15 percent of the workday.

(A.R. 25.) This RFC—the ALJ's determination that Mario was markedly limited in concentrating, persisting, and maintaining pace ("CPP") and moderately limited in the other broad areas of functioning, (id. at 24)—and records reflecting partial hospitalization for mental health conditions, addiction to prescription stimulants, auditory hallucinations, patterns of hypomania followed by anxiety and depression, and episodes of suicidality led the ALJ to conclude that Mario was disabled during this closed period, (id. at 27, 30).

However, the ALJ assessed a new RFC as of August 2, 2018, which does not include an off-task limitation and indicates that Mario could tolerate work instructions during a training period, leading to the conclusion that Mario was no

8

longer disabled.  (Id. at 33, 36.)  The ALJ found that after August 1, 2018, Mario was only moderately limited in all four broad areas of mental functioning, and that his improved symptoms, depression screening reflecting only mild depression, and improved ability to handle stress while refraining from the use of stimulants evidenced medical improvement.  (Id. at 31, 33.)  The ALJ also noted that Mario's "level and frequency of treatment [had] decreased over time"—having transitioned from a five-week partial hospitalization as of the alleged onset date because of stimulant addiction, to routine outpatient therapy on a weekly and then less frequent basis "as time progressed and his symptoms were better controlled."  (Id. at 32.)  And the ALJ cited Mario's activities of daily living, improved Global Assessment of Functioning ("GAF") scores, ability to handle mood swings, and medication dosage reductions.  (Id.)  The court agrees with the government that substantial evidence supports the ALJ's finding of medical improvement.

However, Mario argues that the ALJ ignored treatment records from after August 1, 2018, reflecting ongoing mental health issues along with complaints of suicidal ideation and "severe" psychosocial stressors.  (R. 16, Pl.'s Mem. at 6-7 (citing A.R. 907-08, 933, 1569, 1573, 1581, 1622, 1636-37, 1645, 1648-49, 1784).)  While an ALJ may not selectively cite the record to find that a claimant is not disabled, she also need not mention every piece of evidence.  *See Gedatus v. Saul*, 994 F.3d 893, 901 (7th Cir. 2021) ("True, the ALJ's summary [of the evidence] does not mention every detail.  But it need not.").  And in this case, when viewed as a whole, even the evidence Mario points to largely supports, rather than challenges, the ALJ's

conclusion. To be sure, the ALJ acknowledged that Mario continued to report symptoms related to his mental health conditions after the closed period, but while many of the records note "suicidal ideation" and in some cases "severe" psychosocial stressors, there is no indication that these notes reflect current issues. To the contrary, each record indicates that Mario's mental health is stable or improving, including as evidenced by a mild-to-moderate GAF score, and nearly all records report his "notably positive affect." (A.R. 1572-73 (July 25, 2018 therapy notes indicating "notably positive affect," "[i]mpression – stable," and GAF score of 57), 906-08 (October 31, 2018 psychiatry notes indicating "mood has been fluctuating" and "still some anxiety," but that Mario was "trying to use skills to manage" anxiety and "feels he is doing well"), 1622-23 (December 22, 2018 therapy notes reflecting Mario's self-report that he is "not doing well, I've been angry and overwhelmed," and that he had "notably anxious affect," but GAF score of 57), 1636-37 (February 25, 2019 therapy notes indicating Mario's "notably positive affect," reports that he had been "feeling really positive actually," "[i]mpression – unchanged," and GAF score of 57), 933-36 (March 18, 2019 psychiatry notes indicating Mario's depression as "improved," that Mario is "looking forward" to "moving in two or three months," and had "no other concerns"), 1645-46 (April 15, 2019 therapy notes indicating Mario's "notably positive affect," and "[i]mpression – improved," along with Mario's report that he was "so excited, [he] could cry" in anticipation of flying to meet his girlfriend, and GAF score of 57), 1648-49 (May 9, 2019 therapy reassessment notes reflecting "[i]mpression – improved" and GAF score of 57), 1569-70 (July 16, 2019 therapy notes indicating

Mario was "stable" and continues to "demonstrate a commitment to bettering his life," and GAF score of 57), and 1581-82 (September 17, 2019 therapy notes indicating "notably positive affect," "[i]mpression – stable," and GAF score of 57).) Mario cannot contend otherwise. As such, there was no error here.

## D.  Opinion Evidence

Mario asserts that the ALJ improperly evaluated the opinions of consultative psychologist Dr. Kenneth Heinrichs, treating psychiatrist Dr. Lynn Barnett, social worker Gina Collori, and state agency consultants, as well as his mother's third-party function reports. (R. 16, Pl.'s Mem. at 7-9.) But remand is not warranted on this ground either. Mario applied for benefits after March 27, 2017, so the new regulations forbidding an ALJ from "defer[ing] or giv[ing] any specific evidentiary weight, including controlling weight, to any medical opinion(s)" apply here. 20 C.F.R. §§ 404.1520c(a), 416.920c(a). The ALJ must now assess the persuasiveness of all medical opinions in the record by considering and explaining the most important factors—supportability and consistency. 20 C.F.R. §§ 404.1520c, 416.920c(b)(2); *see also Albert v. Kijakazi*, 34 F.4th 611, 614 (7th Cir. 2022). The supportability factor requires consideration of the objective medical evidence and explanations presented and used by the medical source, 20 C.F.R. §§ 404.1520c(c)(1), 416.920c(c)(1), while the consistency factor directs the ALJ to consider and explain how the medical opinion is consistent with all other medical and nonmedical sources, 20 C.F.R. §§ 404.1520c(c)(2), 416.920c(c)(2). The ALJ also may, but is not required to, explain how she considered the medical source's specialization and relationship with the

claimant and any other factors that tend to support or contradict the source's opinion. 20 C.F.R. §§ 404.1520c, 416.920c(b)(2).

In his August 11, 2018 opinion, consultative psychologist Dr. Heinrichs concluded, among other things, that Mario is limited in short-term memory and sustained concentration and might have difficulty engaging in some work-related activities without close supervision but would be able to adjust to changing expectations in many work environments. (A.R. 873-74.) The ALJ deemed Dr. Heinrichs's opinion of "little persuasiveness" as it pertains to Mario's mental functioning during the closed period because he did not examine Mario until after that period, when he "showed improved symptoms." (Id. at 28 (citing id. at 873-74).) But the ALJ found his opinion "more persuasive" after the closed period, compared with more preclusive opinions, because Dr. Heinrichs's conclusion that Mario had sufficient memory to engage in some work-related activities and was able to adjust to changing expectations at many work environments was "more consistent" with the evidence of his "improved mental functioning." (Id. at 34.)

Mario says that the ALJ's treatment of Dr. Heinrichs's opinion was inconsistent. (R. 16, Pl.'s Mem. at 7.) The court disagrees because the ALJ appropriately afforded Dr. Heinrichs's opinion more weight for the period to which it was related than for the period to which it was not. Mario also argues that the ALJ did not explain how Dr. Heinrichs's opinions were consistent with medical improvement or the moderate ability to focus or stay on task, as the ALJ ultimately found. (Id. at 8.) But this is not a sufficient basis for remand. As stated, the ALJ

12

noted that Dr. Heinrichs expressly found that despite Mario's limitations, Mario would "likely be able to adjust to the changing expectations of many work environments," and his short-term memory limitations only "may" interfere with his ability to engage in "some" work activities without supervision—in other words, they might not interfere with any activities at all. (A.R. 874.) As such, even if the ALJ's explanation was lacking, any error was harmless.

Next, the ALJ determined that the December 2017 joint opinion of treating psychiatrist Dr. Barnett and social worker Collori assessing work-preclusive limitations was of "little persuasiveness" following the closed period because it did not account for Mario's "sustained symptomatic improvement" since that time. (Id. at 34.) Mario asserts that the ALJ should not have assumed that Dr. Barnett's and Collori's opinion would have changed if given the opportunity to provide one after the closed period. (R. 16, Pl.'s Mem. at 8.) But the ALJ made no such assumption. Rather, she credited the opinion for the period in which it was rendered but concluded that it was inconsistent with evidence during the period that followed.

As for the state agency consultant opinions, Mario complains that the ALJ found them persuasive after the closed period even though they were based upon evidence gathered during the closed period. (Id. at 8-9.) But the ALJ explained that those opinions—including that Mario experienced no more than moderate limitations in all areas of mental functioning even during the closed period—were consistent with other evidence revealing his "improved mental functioning" thereafter. (A.R. 34.)

This was not error.  And importantly, had the ALJ credited those opinions during the closed period, Mario may not have received any benefits at all.

Mario's complaints fare no better with regard to the ALJ's treatment of his mother's third-party function reports.  He argues that the ALJ improperly concluded that those reports—dated July and September 2018—were "of little persuasiveness" even though statements from family members are "competent and probative evidence" that ALJs are required to consider.  (R. 16, Pl.'s Mem. at 9 (citing *Desiree B. v. Saul*, No. 18 CV 8129, 2019 WL 6130814 (N.D. Ill. Nov. 19, 2019) and *Roque v. Colvin*, No. 15 CV 392, 2016 WL 1161292 (N.D. Ill. March 22, 2016)).)  But the ALJ did not improperly evaluate his mother's reports because she considered them and found them to be "generally consistent with those alleged by the claimant."  (See A.R. 28, 34.)  Mario may not like the result of those considerations or conclusions regarding his own credibility—discussed further below—but that is not cause for remand.  *See Fitschen v. Kijakazi*, 86 F.4th 797, 802 (7th Cir. 2023) (noting that courts "do not reconsider facts, reweigh the evidence, resolve conflicts in the evidence, or decide questions of credibility"); *see also Books v. Chater*, 91 F.3d 972, 980 (7th Cir. 1996) (declining to remand for failure to address family member statement because "it served strictly to reiterate, and thereby corroborate, [the claimant's] own testimony").

E.      **Symptom Assessment**

Mario argues that the ALJ failed to properly evaluate his subjective symptom allegations.  (R. 16, Pl.'s Mem. at 10-12; R. 23, Pl.'s Reply at 5-6.)  When assessing a claimant's subjective reports, an ALJ considers objective medical evidence, daily

activities, frequency and intensity of pain or other symptoms, medication, treatment and other measures to relieve pain or other symptoms, and functional limitations. *See* SSR 16-3p, 2017 WL 5180304, at *7-8 (Oct. 25, 2017); 20 C.F.R. §§ 404.1529(c)(3), 416.929(c)(3). An ALJ's symptom evaluation is generally entitled to great deference because she can observe the claimant's credibility firsthand. *See Murphy v. Colvin*, 759 F.3d 811, 815 (7th Cir. 2014). As such, a court will not disturb the evaluation if it is based on specific findings and evidence and is not "patently wrong"—that is, so long as it does not "lack[] any explanation or support." *Id.* at 815-16 (citing *Elder v. Astrue*, 529 F.3d 408, 413-14 (7th Cir. 2008)); *see also Bates v. Colvin*, 736 F.3d 1093, 1098 (7th Cir. 2013) (stating that court's review of ALJ's symptom assessment is "extremely deferential").

Mario challenges the ALJ's reliance on his daily activities—including working on parenting skills, spending time with family, creating art, and attending his son's birthday party—suggesting that the ALJ improperly equated the same with an ability to work full time. (R. 16, Pl.'s Mem. at 11 (citing A.R. 33).) The court disagrees. The record shows that the ALJ simply considered those activities—as the regulations require her to—when assessing whether Mario's "symptoms were as severe and limiting as []he alleged." *Jeske v. Saul*, 955 F.3d 583, 593 (7th Cir. 2020); (see also A.R. 33). And the ALJ concluded that Mario's activities were inconsistent with the debilitating symptoms he said he continued to suffer after the closed period, pointing out that while Mario claimed he remained unable to concentrate and focus, many of his activities—some of which he said he engaged in for up to six hours a day—

required at least some level of each. (A.R. 33-34.) The court does not find any error with that conclusion.

Mario attempts to clarify this argument in his reply brief, explaining that his quarrel is instead with the ALJ's finding of medical improvement based on his daily activities without considering that he may also have engaged in them before August 2, 2018. (R. 23, Pl.'s Reply at 5-6.) But the ALJ did not cite Mario's daily activities when finding medical improvement. She instead pointed to Mario's improved symptoms, depression screening reflecting only mild depression, and better ability to handle stressors and to refrain from using stimulants. (A.R. 33.) Further, even if the ALJ erred when considering Mario's daily activities, she cited other reasons for discounting his symptom allegations, and only one has to be valid. *See Kittelson v. Astrue*, 362 Fed. Appx. 553, 558 (7th Cir. 2010) (finding that ALJ's specification of "another, valid reason" for discounting subjective symptom allegations "provided a sufficient basis for the ALJ's adverse" symptom assessment). Mario says that none are valid, but again the court disagrees.

Mario complains that the ALJ unreasonably relied on what he wore to the hearing to discount his allegations, pointing out that a person under treatment for chronic disease is likely to have "better days and worse days" and symptoms that "wax and wane." (R. 16, Pl.'s Mem. at 12.) It is true that the ALJ noted Mario's "stylish, matching attire with leather accents and a beanie" at his hearing, (A.R. 31), but she did not do so in a vacuum. The ALJ also noted that the record as a whole reflected "no significant problem with the claimant's grooming or appearance," and

contrasted that fact with Mario's testimony that he recently had undergone prolonged periods without showering.  (Id.)  Noting this inconsistency was not error.

Mario next complains that the ALJ cannot rely on improved GAF scores to discredit his testimony and find medical improvement because earlier in her opinion she found GAF scores of "minimal persuasiveness."  (R. 16, Pl.'s Mem. at 11 (citing A.R. 28).)  But as the ALJ notes, while the Commissioner might decline to endorse the GAF scale for use in disability benefit determinations, that does not mean the ALJ may not consider an upward trend in those scores to reflect the possibility of Mario's improvement or contrast the same with his subjective allegations.  (A.R. 28, 34.)  There is no inconsistency here, and the ALJ supported her symptom assessment with this and other substantial evidence, including improved moods, reduced medication, and overall treatment that had become more routine.  (Id. at 33.)  The court finds no error on this ground.

## F.    RFC Assessment

Mario also takes issue with the ALJ's RFC assessment, arguing first that she erred in concluding that beginning August 2, 2018, he could withstand interaction with a supervisor during a training period, while still limiting him to occasional interaction with co-workers, supervisors, and the public thereafter.  (R. 16, Pl.'s Mem. at 9.)  For support, Mario points to: (1) his hearing testimony about an outburst he had at a family wedding and his testimony that he would have trouble interacting appropriately with a supervisor, (id. (citing A.R. 68, 80)); (2) his mother's report that he experiences social anxiety, (id. (citing A.R. 332)); and (3) the VE's testimony that

angry outbursts and the inability to interact appropriately with others would not be tolerated in competitive employment, (id. (citing A.R. 91-92)). But the ALJ need not accept Mario's testimony regarding his difficulty with interactions or conclude that he could not survive a training period based on his own account of a single incident. And as stated, Mario's mother's report is duplicative of his own. Further, the VE did not testify that limitation to occasional interaction during a training period would preclude a person from performing the jobs identified, as occurred in the case Mario cites. (R. 16, Pl.'s Mem. at 9 (citing *Bernard L. v. Saul*, No. 19 CV 1223, 2020 WL 7027637, at *2 (N.D. Ill. Nov. 30, 2020)). To the contrary, the hypotheticals presented to the VE specifically omit any limitation relating to interaction during the introductory or training period. (A.R. 84-85 (indicating that occasional interaction limitation posed in hypothetical did not "refer[] to any introductory period").) And courts in this district have upheld RFCs allowing for unlimited or typical levels of interaction during an introductory period and only occasional work-related interactions thereafter. *See Patrice R. v. Kijakazi*, No. 21 CV 6485, 2023 WL 6552885, at *12 (N.D. Ill. Oct. 8, 2023); *Robert V. v. Kijakazi*, No. 22 CV 1601, 2022 WL 17082528, at **1, 12 (N.D. Ill. Nov. 18, 2022); *Jonathan Daniel G. v. Saul*, No. 20 CV 3160, 2022 WL 972407, at *2 (N.D. Ill. March 31, 2022). As such, the fact that the RFC did not include any restrictions on interaction during the training period was

neither improper nor "unusual," (R. 16, Pl.'s Mem. at 9), and there can be no remand on this basis.

Mario also argues that the ALJ failed to sufficiently accommodate his stress tolerance and poor concentration when she limited him to simple instructions without high production demands and occasional interactions and few workplace changes, among other things. (Id. at 10.) He points to the general notion that stress is individualized and a lower skilled job does not necessarily translate to lower stress and contends that his self-reported "outbursts" and difficulty "with chaotic situations and completing paperwork" are "beyond the level of stress contemplated by the RFC." (Id.) But even setting aside the conclusory nature of Mario's arguments, given that his "outbursts" occurred in the presence of many (e.g., at a family wedding) and the assessed RFC limits Mario's interaction with others while providing for few workplace changes and simple instructions, the court is not persuaded that the assessed limitations are insufficient. Nor does Mario suggest additional limitations. *See Jozefyk*, 923 F.3d at 498 (holding that any error in ALJ's RFC assessment was harmless because "[i]t is unclear what kinds of work restrictions might address [claimant]'s limitations in concentration, persistence, or pace because he hypothesizes none"); *see also Laura B. v. Kijakazi*, No. 20 CV 3403, 2023 WL 2306938, at *8 (N.D. Ill. March 1, 2023) (concluding that ALJ was "not obligated to consider limitations stemming from this impairment" in part because claimant "fail[ed] to suggest what additional limitations" her condition imposed). Accordingly, the court does not find any error with the ALJ's RFC assessment.

19

## Conclusion

For the foregoing reasons, Mario's motion for summary judgment is denied and the government's granted.

ENTER:

Young B. Kim
United States Magistrate